IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEE MIRANDA,

            Petitioner,

vs.                                    No. CIV 00-706 BB/LFG

JOE WILLIAMS,

            Respondent.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed May 15, 2000. Respondent filed his answer, along with a motion to dismiss [Doc. 10], to which Petitioner Lee Miranda ("Miranda") filed a response and accompanying memorandum [Docs. 12, 13]. Miranda, currently incarcerated at the Lea County Correctional Facility in Hobbs, New Mexico, challenges the judgment and sentence entered by the Fifth Judicial District Court in State v. Miranda, No. CR-98-221 (County of Chaves, New Mexico).

2. Miranda was tried without a jury on February 26 and March 2, 1999. Following the bench trial, the judge denied Miranda's motion to suppress and found him guilty of trafficking in cocaine, tampering with evidence, and resisting, evading or obstructing an officer. The judge sentenced him

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

to nine years incarceration, suspending all but five years.  His conviction was affirmed by the New Mexico Court of Appeals.  That court also rejected Miranda's motion for reconsideration.  The state supreme court denied certiorari.  Miranda did not file a state habeas petition.

3.  Miranda presents the following grounds for federal habeas review:  (1) the trial court incorrectly denied his motion to suppress evidence seized from his car and person, as the police did not have reasonable suspicion to stop him; and (2) the evidence was insufficient to show that Miranda had the intent to distribute cocaine.  Both of these grounds were raised in Miranda's direct appeal in state court, and both were rejected by the court of appeals, with certiorari denied by the state supreme court.  Respondent contends in his motion to dismiss that this petition is governed by 28 U.S.C. § 2254(d) and therefore should be dismissed, because the state court decisions adjudicating these claims were neither contrary to nor involved an unreasonable application of clearly established federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented.  Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000).  The Court agrees with Respondent and recommends that the petition be dismissed.

## Facts and Procedural History

4.  Shortly after midnight on August 22, 1998, police were called to the scene of a disturbance at a home on Wyoming Street in Hobbs, New Mexico, on reports of a fight at the home.  Officers Larry Harrell ("Harrell") and Anthony Lara ("Lara") responded to the call.  When police arrived, several people who had gathered there ran from the scene and into the house.  Harrell and Lara questioned several juveniles at the scene and attempted to locate victims, witnesses, and suspects.

5.  While the officers were investigating the reported disturbance, Miranda drove up Wyoming street in his mother's car, approached the scene of the investigation, stopped the car and got out.  The

2

evidence at trial was conflicting as to why Miranda stopped.  He says that he went to the house looking for a friend or relative who was supposed to be at the gathering there that night when a police officer, later identified as Harrell, motioned him aside and directed him to pull over and park, on the wrong side of the road, and to get out of the car.  However, Harrell testified that Miranda stopped the car on his own, on the wrong side of the street, got out and was standing in the open doorway on the driver's side of the car before the police approached him.  Miranda testified that Harrell asked him for his driver's license; Harrell said that he asked Miranda his name, then asked if he could verify his identity, but did not demand that he provide his driver's license.

6.  While Miranda was engaged in conversation with Harrell, Lara approached and observed a bulge in Miranda's sock at ankle level.  He asked Miranda whether the bulge he observed was a probation bracelet.  Miranda was wearing shorts and white socks, pulled up toward his knees, at the time of his conversation with police officers.  Lara stated that the bulge led him to believe that Miranda might be in violation of his probation, as he was out after midnight.  Miranda answered that he was not on probation.  Lara says that he next asked what was in the sock, then; Miranda says Lara asked him to remove whatever was there.  In any event, in response to Lara's question, Miranda reached into his sock, pulled out a clear plastic baggie and started to run away, throwing the baggie in front of the car.  He was apprehended by Lara and Harrell and arrested for resisting and obstructing an officer and on suspicion of possession of contraband.  The material in the plastic bag was tested and found to contain 11.39 grams of cocaine.  Miranda was advised of his rights, and a subsequent search of his person revealed a pager and over $800 in cash.  Following Miranda's arrest, the car he was driving was impounded and searched pursuant to a warrant.  The car contained, among other things, 89 small plastic baggies approximately 1 inch square, a cell phone, and a radio frequency

scanner.  Small plastic baggies of this size are often used in packaging drugs for distribution.

7.  Miranda filed a pretrial motion to suppress the cocaine evidence.  Both parties submitted proposed findings and conclusions, including their arguments on the motion to suppress.  The motion was combined with the bench trial.  At the conclusion of trial, the court filed its Findings of Fact and Conclusions of Law, choosing to believe the officers' testimony that Miranda drove up to the scene of the investigation looking for his friend and stopped his car on the wrong side of the road before Harrell approached him.  The court also chose to believe the testimony that  Lara noticed the bulge in Miranda's sock and asked him if he were on an ankle bracelet program, whereupon Miranda voluntarily reached down into his sock without being asked, and pulled out a clear plastic baggie, started to run, and threw the baggie in front of his car.  The findings also state that a pager and cash in the amount of $817.31 were found on Miranda's person at the time of the arrest, and that at various times following his arrest, Miranda acknowledged possession of the cocaine and stated he panicked when the officers approached and that he pulled the baggie from his sock because he was scared.  (Ex. F to Answer).

8.  In his Conclusions of Law, the judge ruled that the police officers' actions "in approaching the defendant as a part of their investigation into what had taken place at 3003 South Wyoming were reasonable and necessary under the circumstances," that the motion to suppress would be denied, and that the evidence established beyond a reasonable doubt that Miranda committed the crimes with which he was charged.  (Ex. F to Answer).

9.  On direct appeal, Miranda raised the same issues he now presents in this federal habeas proceeding.  The New Mexico Court of Appeals proposed summary affirmance, and Miranda filed extensive objections to this proposal in his memorandum in opposition.  The court of appeals

4

conducted a *de novo* review of the Fourth Amendment claim and rejected Miranda's argument, that he was subject to an illegal detention which was further tainted by an impermissible inquiry concerning the contents of his sock. The court held:

> [W]e believe that the initial, brief detention of Defendant was reasonable in light of the fact that Defendant not only interjected himself into the scene of a criminal investigation, but also illegally parked upon his arrival. Although Defendant argues that the officers lacked any specific information that Defendant was involved in the fight that had reportedly just occurred, Defendant's conduct provided a reasonable basis to briefly detain him to dispel any suspicion that he was, in fact, involved in the melee. The conduct at issue is not simply a parking violation, as suggested by Defendant, but a voluntary and affirmative act on Defendant's part to interject himself into the investigation that was taking place.

Memorandum Opinion in <u>State v. Miranda</u>, Ex. J to Answer, at 2. The court of appeals also held that Miranda had no standing to challenge the officers' retrieval of the baggie of cocaine, because he abandoned this property.

10. In examining the issue of whether the evidence was sufficient to support the element of intent to distribute, the court of appeals stated that the standard to be applied was whether a rational jury could find that each element of the offense was established beyond a reasonable doubt. The court held that the amount of cocaine, 11.39 grams, combined with the large amount of cash found on Miranda at the time of his arrest, provided sufficient circumstantial evidence to support the conviction. The court of appeals also noted that the trial judge, as factfinder, was free to reject Defendant's version of events.

11. Miranda contended on appeal that the court should have discounted the testimony of Detective William Brown ("Brown") who stated that the amount of cocaine was consistent with intent to distribute, because earlier in his testimony Brown could not specify the amount of cocaine

that a person would ordinarily possess for personal use.  In rejecting this argument, the court noted that "the factfinder was not asked to determine the precise amount ordinarily indicative of personal use, but whether the amount in question was consistent with intent to distribute."  The detective's statement of ignorance as to amounts for personal use went to weight and not to admissibility of his testimony.  The court held there was sufficient evidence on the record to support the trial judge's conclusion that the intent element had been proved beyond a reasonable doubt.

12.  Miranda filed a motion for rehearing, arguing *inter alia* that the police did not have a reasonable basis for inquiring about the bulge in Miranda's sock, since his only suspicious actions at the scene involved a mere parking violation and the melee that the police were investigating was over by the time Miranda arrived on the scene.  (Ex. K to Answer).  The court of appeals summarily denied the motion for rehearing.  (Ex. L to Answer).

13.  Miranda then filed a petition for certiorari with the New Mexico Supreme Court, raising again the Fourth Amendment issue and issue of sufficiency of the evidence regarding intent.  (Ex. M to Answer).  The supreme court denied the petition, without discussing the merits.  (Ex. N to Answer).

**Discussion**

14.  Miranda's current claims were clearly adjudicated on the merits in the New Mexico courts.  Whether seen as legal or factual conclusions, the holdings of the state trial and appellate courts do not meet the strict standards for granting the petition for federal habeas relief, as they neither constitute decisions that are contrary to or involve an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court, nor do they represent an unreasonable determination of the facts in light of the evidence presented.

<u>Fourth Amendment Issue</u>

15.  The Court on federal habeas review must presume the correctness of state court findings of fact, unless the petitioner can rebut that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); <u>Battenfield v. Gibson</u>, No. 99-7096, 2001 WL 10777, at *7 (10th Cir. Jan. 2, 2001). In this case, the testimony was in conflict regarding the circumstances under which Miranda was stopped, and the trial judge choose to believe the officer's version of events rather than Miranda's. Credibility decisions are reserved for the trier of fact.  <u>In re Young</u>, 237 F.3d 1168, 1176 (10th Cir. 2001).  The judge made findings of fact that Miranda voluntarily stopped his car on the wrong side of the street and stepped out in the midst of police activity at the scene of a reported disturbance, thereby injecting himself into the investigation.   Under the circumstances, the court found, the officer's action in initially deciding to interrogate Miranda and later asking him about the bulge in his sock, were reasonable, and thus the judge denied Miranda's motion to suppress.  There was evidence to support the court's finding.

16.  These findings and conclusions comported with federal law and were neither erroneous nor unreasonable.  <u>Van Woudenberg v. Gibson</u>, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *petition for cert. filed* 12/8/00 (under the <u>Williams v. Taylor</u> standard, the application of federal law must be not only erroneous or incorrect, but also unreasonable).  Clearly established federal law provides that police may stop and interrogate a person upon reasonable suspicion falling short of probable cause, <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S. Ct. 1868 (1968), succeeded by flight and abandonment of personal property, <u>Illinois v. Wardlow</u>, 528 U.S. 119, 120 S. Ct. 673 (2000) (flight may provide reasonable suspicion).  And in a situation where police ask a suspect to stop but he flees and the police pursue him, no seizure has occurred and any contraband dropped during the pursuit is deemed to be

7

abandoned rather than the fruit of a seizure.  California v. Hodari D., 499 U.S. 621, 111 S. Ct. 1547 (1991).

17.  The test for reasonableness of an investigative detention is "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20; United States v. Hishaw, 235 F.3d 565, 569 (10th Cir. 2000).   The officer may stop and briefly detain a person for investigative purposes "if the officer has a reasonable suspicion ... that criminal activity 'may be afoot.'"  United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989), but the officer must be able to point to specific and articulable facts to support a finding of reasonable suspicion;  an inchoate and unparticularized suspicion or hunch is insufficient.  Terry, 392 U.S. at 21.  The bulge observed in Miranda's sock merited further inquiry.  It could well have been a concealed weapon that would affect the officers' safety.  Here, the officer thought the bulge was an electronic ankle bracelet and that therefore Miranda might be a probationer or pre-trial releasee.

18.  The Court cannot say that the state court was unreasonable in finding that the officers' actions were justified at the inception and reasonably related in scope to the circumstances which justified their approaching Miranda in the first place.

19.  Harrell testified that he was called to scene of a reported fight at a home in Roswell and found a number of people running into the house and through the yard when he arrived.  (Tape 1 of bench trial, February 26, 1999, at counter 28.58, hereafter cited in the format "T1-2/26 at 28.58").[2] His first responsibility was to attempt to ascertain what happened, whether anyone was hurt, and who was involved in the fight.  He found three juveniles in the yard and questioned them, but they were

---

[2]The trial tapes were played on a Sony BM-75 machine, which has 47.00 counters per tape side.

evasive and did not give him names or descriptions of the persons responsible for the fight.  (T1-2/26, at 30.55-31.30).

20.  At this point, Harrell testified, he heard a car pulling up to the house, and turned around and saw Miranda parking his car on the wrong side of the street.  Harrell stated that Miranda got out of the car and was standing in the open driver's side doorway, before Harrell had a chance to say anything to him.  Harrell testified that he did not instruct Miranda to stop, either in words or by gestures, and did not ask Miranda to exit the vehicle.  (T1-2/26, at 31.55-34.00)

21.  Harrell further testified that, when he saw Miranda standing in the doorway, he asked him to step away from the car, asked why he was there, and asked what his name was.  When Miranda responded, Harrell said he asked whether Miranda had a driver's license to verify his identity, and Miranda supplied his license.  Harrell stated that he did not demand that Miranda provide his license. (T2-2/26, at 0.25-1.36).

22.  Harrell further testified that the reason he approached Miranda and began to question him was because the juveniles he interrogated earlier were evasive and didn't disclose any information about the reported fight.  Harrell did not know, at this point, what was going on, and when Miranda's car pulled up and stopped, Harrell says he thought this might be a witness, a suspect, or perhaps a victim, and he questioned Miranda to see if he knew anything about the disturbance.  (T2-2/26 at 2.20-2.35; T2-2/26 at 2.25).  Harrell ran a check on Miranda's license for outstanding warrants and didn't find any.  He says that, at this point, he was going to give Miranda back his driver's license and let him go on his way, when Lara approached.  (T2-2/26 at 4.38).

23. Miranda testified that he drove by the house to pick up his young cousin or friend and had slowed down to see if he could spot the friend, when Harrell stepped out and told him, in words and

gestures, to stop the car. (T1-3/2 at 16.23, 18.09-19.35). He says that Harrell told him to get out

of the car and asked him to produce his driver's license. (T1-3/2 at 20.25-21.39). He further testified

that, because of the police presence, he would not have stopped if he hadn't been told to do so. (T1-

3/2 at 34.09, 35.25). Miranda's testimony conflicted with Harrell's, but the judge chose to believe

Harrell's version of events. This is the essence of fact-finding. The judge as fact-finder is to

determine the credibility of the witnesses and the weight to be given to their testimony. Here, the

court chose to credit the officer's testimony over Miranda's.

24. Lara testified that he, too, was called to the house on Wyoming Street to investigate a

reported fight. When he arrived, he began a search for the victim and, after he was located, went

back to the house and questioned some of the youngsters who were still there. The witnesses were

not particularly cooperative, and he didn't get a description of the suspect or suspects. Following

this questioning, Lara went back outside to the front of the house, where he observed Harrell in

conversation with Miranda. (T3-2/26 at 11.32-16.15). Lara stated that he didn't know, as he

approached Harrell and Miranda, "what Officer Harrell had," *i.e.,* he didn't know if Miranda was

another victim, a suspect, or a witness. He looked first at Miranda's hands, then up and down his

body, as he was trained to do for officer safety. It was during this visual scan that he noticed a bulge

in Miranda's right sock. (T3-2/26 at 17.26).

25. Lara further stated that he thought at first that the bulge might an ankle bracelet-type

monitor, and that Miranda might be a probationer. He interrupted Harrell's conversation with

Miranda and asked whether the bulge was an ankle bracelet. Miranda said that it wasn't, and Lara

asked then what the lump was. (T3-2/26 at 17.44-18.15). Lara says that he never asked Miranda

to reveal what was in his sock, but rather simply asked him what it was. In response to the question,

10

Miranda reached down, pulled a plastic baggie out of his sock, and took off running.  As he was

running, he threw away the baggie.  Lara tackled Miranda, and both officers handcuffed him, read

him his rights, and placed him under arrest for obstructing an officer.  (T3-2/26 at 18.28-20.10).  Lara

testified that he didn't know, at the time he approached Miranda, whether he was a witness, a

suspect, or another victim.  (T3-2/26 at 20.31).

26. Miranda testified that, as he was standing near his car talking to Harrell, Lara approached,

shined his flashlight on Miranda, noticed the bulge in his sock and asked him whether he was on

probation.  Miranda further testified that Lara said, "What's in your sock?  Let me see it," at which

point Miranda "decided to leave."  (T1-3/2 at 22.38-22.59).  He stated further that he did not

voluntarily remove the baggie of cocaine from his sock, but removed it because the police officers

told him to show them what was in the sock.  (T1-3/2 at 35.35).  Again, Miranda's testimony

conflicts with Lara's, but the judge chose to believe Lara.

27.  Both of the police officers testified that they were uncertain of the status of the reported

fight, at the time they arrived at the scene.  It appeared that those who had participated in the fight,

whether perpetrators or victims, had already fled.  The officers testified that one victim of a beating

had been located by the time Miranda arrived on the scene, but they didn't know whether there might

be others.  When Miranda pulled up, the officers had already questioned some of the juveniles still

at the house but were unable to get a clear description of the perpetrators.  Both officers testified that

they didn't know who Miranda was, and that his behavior in pulling up to the house, parking on the

wrong side of the street, stopping, and getting out, led them to question him as a possible victim,

witness, or suspect.  Lara stated that he did not ask or tell Miranda to remove the bulge from his

sock; he stated that if Miranda had refused to tell him what was in the sock, he could not have forced

him to do so.  In addition, there was evidence at trial that Miranda panicked and pulled the baggie

out of his sock voluntarily, throwing it away as he ran.

28.  These facts support the trial judge's ruling that the police had reasonable suspicion to

question Miranda at the inception of their contact with him, and that their questioning did not extend

beyond what was necessary for their own protection and what was proportionate to the

circumstances.  Miranda pulled up and stopped at the scene of a police investigation. The officers

thought he might be a victim or suspect, or perhaps had information as a witness that might shed light

on the situation.

> An individual's presence in an area of expected criminal activity,
> standing alone, is not enough to support a reasonable, particularized
> suspicion that the person is committing a crime . . .  But officers are
> not required to ignore the relevant characteristics of a location in
> determining whether the circumstances are sufficiently suspicious to
> warrant further investigation . . . In reviewing the propriety of an
> officer's conduct, courts do not have available empirical  studies
> dealing with inferences drawn from suspicious behavior, and we
> cannot reasonably demand scientific certainty from judges or law
> enforcement officers where none exists.   Thus, the determination of
> reasonable suspicion must be based on commonsense judgments and
> inferences about human behavior.

Illinois v. Wardlow, 528 U.S. at 124-25.

29.  The court's findings of fact regarding the circumstances of Miranda's pulling over and

parking in front of the house in the first place, and his voluntarily removing and discarding the baggie

of cocaine, are supported by the evidence presented at trial, and Miranda has not presented clear and

convincing evidence that they were not, as required by § 2254(e)(1).  The state court rulings, at trial

and on appeal, are neither contrary to nor involve an unreasonable application of clearly established

federal law as determined by the U.S. Supreme Court, nor do they represent unreasonable

determinations of the facts in light of the evidence presented.

30.  In addition,  the Court notes that Miranda had a "full and fair opportunity" to litigate his Fourth Amendment claim in state court, thus precluding federal habeas review. Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037 (1976); Gamble v. Oklahoma, 583 F.2d 1161, 1163-64  (10th Cir.1978); Bensley v. Kaiser, No. 00-5130, 2001 WL 37701, at *1 (10th Cir. Jan. 16, 2001).

Sufficiency of the Evidence

31.  Clearly established Supreme Court law holds that a sufficiency of the evidence claim must be measured against the standard, "whether, after considering all the trial evidence in the light most favorable to the prosecution . . . any rational trier-of-fact could not have found each separate element of the crime charged was proved beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  This is the standard applied by the state court of appeals in reviewing Miranda's claim of insufficient evidence to prove intent to distribute, and the court applied it correctly.

32.  The court of appeals noted that the amount of cocaine, 11.39 grams, combined with the large amount of cash which Miranda had on his person at the time of arrest, provided sufficient circumstantial evidence to support the intent element.  Both the amount of drugs possessed and the presence of cash are appropriate factors to consider in determining whether defendant had the requisite intent to support a trafficking charge.  United States v. Allen, 235 F.3d 482, 492 (10th Cir. 2000). Similarly, the presence of the 89 small plastic baggies, of the kind often used to package controlled substances, lends support to the conclusion that Miranda's drugs were not intended for personal use, but for distribution.  In addition, the Court notes that the other items seized upon arrest and in the post-arrest search of the vehicle Miranda was driving (a pager and a radio frequency scanner) tend to support the inference of intent to traffic in drugs.

13

33. Miranda argues that certain testimony of Detective William Brown ("Brown") should not have been admitted. Brown stated that the amount of cocaine found on Miranda, coupled with the fact that he also had a large amount of cash and a pager on his person at the time of the arrest, led him to advise Lara and Harrell to charge Miranda with trafficking as opposed to mere possession. Brown has greater training and experience in narcotics than the other two officers. He was called to the scene of Miranda's arrest, where he field tested the contents of the baggie that had come from Miranda's sock and determined that it contained cocaine. (T4-2/26 at 17.52-21.43).

34. Brown testified that the amount of cocaine seized from Miranda that night was more than the amount he usually saw on someone who is merely using the drug, as opposed to dealing in it. He also stated that persons who are just users do not generally have large amounts of cash on them, although dealers often do. He stated that the amount of cocaine found on Miranda, the presence of a pager, and his possession of over $800, was consistent with an intent to traffic. (T4-2/26 at 31.26-38.20). He further testified that his advice to charge trafficking rather than mere possession was based not solely on the amount of cocaine found on Miranda, but on all the facts and circumstances surrounding the arrest. (T5-2/26 at 1.02-2.20).

35. Defense counsel challenged Brown's competence to testify that the amount of cocaine implied an intent to traffic because earlier in his testimony, Brown said that he could not state the amount of cocaine which was a typical dose for personal use (T4-2/26 at 26.00-26.47). However, Brown did state that, in his experience, the amounts usually seized from a person who is using but not dealing are typically no more than a "teener," of 1/16 of an ounce, which comes to about 1.75 grams of cocaine. (T4-2/26 at 31.26-31.44). Miranda had 11.39 grams of cocaine in his possession at arrest. The court refused defendant's request to strike this testimony, noting that Brown, who had

experience in narcotics arrests, was properly allowed to testify as to an amount typically encountered on occasions when an individual is arrested for possession.  (T5-2/26 at 0.49-1.02).

36.  On the issue of sufficiency of the evidence to sustain the finding of intent to traffic, the court of appeals held:

> Defendant attempts to discredit Detective Brown's testimony that the amount of cocaine was consistent with intent to distribute on the basis that Detective Brown could not specify the amount ordinarily used for personal use.  However, the factfinder was not asked to determine the precise amount ordinarily indicative of personal use, but whether the amount in question was consistent with intent to distribute.  To the extent that Defendant is arguing that the Detective's testimony was inadmissible because there was inadequate foundation with respect to the personal use issue, we believe that this went to the weight and not the admissibility of the testimony and, as we have stated, Detective Brown's testimony was sufficient to support the State's burden of proof with respect to intent.

Memorandum Opinion in State v. Miranda, Ex. J to Answer, at 3-4.

37.  This holding is in keeping with clearly established Supreme Court law.  This Court cannot say that no rational trier of fact could have found an intent to distribute, beyond a reasonable doubt, after considering all the evidence, including the items found on Miranda's person and in his car, items such as the large amount of cocaine, the presence of a pager, a scanner, large amounts of cash, and a store of 1-inch by 1-inch baggies typically used to package drugs.  Brown's testimony was important, but it was not the only evidence on this issue.  In any case, the Court cannot say that his statement of ignorance regarding the amount typically  held for personal use so thoroughly undermined his later testimony as to render it without foundation, particularly in light of his statement of knowledge concerning the amount typically in the possession of persons arrested for use only.  The trial court's finding of intent, and the New Mexico Court of Appeals' decision on the sufficiency of the intent evidence, were neither erroneous nor unreasonable, and this Court will defer to them.

**<u>Recommended Disposition</u>**

That the petition be denied, the Motion to Dismiss [Doc. 10] be granted, and the action be

dismissed with prejudice.

_Lorenzo F. Garcia_

Lorenzo F. Garcia
United States Magistrate Judge